**MARR HIPP JONES & WANG**
A LIMITED LIABILITY LAW PARTNERSHIP

LYNNE T. T. TOYOFUKU    4958-0
Email: ltoyofuku@marrhipp.com
NICHOLE K. SHIMAMOTO    7700-0
Email: nshimamoto@marrhipp.com
1001 Bishop Street
1550 Pauahi Tower
Honolulu, Hawaii 96813
Tel. No. (808) 536-4900
Fax No. (808) 536-6700

H. CLYDE LONG, ESQ.
Email: longlawoffices@yahoo.com
Long Law Offices
950 Risa Road, 2nd Floor
Lafayette, California  94549
Tel. No. (925) 284-5575
Fax No. (925) 284-5659

Attorneys for Defendants
SMF SYSTEMS CORPORATION, TOM
CAFFREY AND RUBY CAFFREY

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 1 5 2005

at ____ o'clock and ____ min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN A. MOFFETT, | ) CV NO. 03-00130 MLR-BMK |
| Plaintiff, | ) |
| vs. | ) NOTICE OF HEARING; |
| | ) DEFENDANTS SMF SYSTEMS |
| | ) CORPORATION, TOM CAFFREY |
| SMF SYSTEMS CORPORATION, A | ) AND RUBY CAFFREY'S **MOTION** |
| MARYLAND CORPORATION; TOM | ) **FOR SUMMARY JUDGMENT**; |
| CAFFREY; RUBY CAFFREY; DOE | ) MEMORANDUM IN SUPPORT OF |

69379.v1
0455.002

**EXHIBIT J**

CORPORATIONS 1-20; DOE ) MOTION; CERTIFICATE OF
CORPORATIONS 1-20; DOE ) COMPLIANCE PURSUANT TO
ENTITIES 1-20; JOHN DOES 1-20; ) LR7.5 FOR CASE NO. CV 03-00130
JANE DOES 1-20; GOVERNMENTAL ) MLR BMK; CERTIFICATE OF
AGENCIES 1-20, ) SERVICE
)
)
          Defendants. )
) DATE:     August 18, 2005
) TIME:     12:00 noon
) JUDGE:   The Honorable
)              Manuel L. Real
)
) TRIAL:   September 19, 2005
)

## NOTICE OF HEARING

TO:      BARBARA A. PETRUS, ESQ.
          DONNA H. KALAMA, ESQ.
          ANNE T. HORIUCHI BELL, ESQ.
          GOODSILL ANDERSON QUINN & STIFEL
          1099 Alakea Street
          1800 Alii Place
          Honolulu, Hawaii 96813

          Attorneys for Plaintiff
          JOHN A. MOFFETT

          NOTICE IS HEREBY GIVEN that Defendants SMF Systems

Corporation, Tom Caffrey and Ruby Caffrey's Motion for Summary Judgment

shall come on for hearing before the Honorable Manuel L. Real, Judge of the

United States District Court, for the State of Hawaii, via telephone on August 18,

2005 at 12:00 noon.

     DATED:    Honolulu, Hawaii, July 15, 2005.

 

LYNNE T. T. TOYOFUKU
NICHOLE K. SHIMAMOTO

Attorneys for Defendants
SMF SYSTEMS CORPORATION, TOM
CAFFREY AND RUBY CAFFREY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN A. MOFFETT, | ) CV NO. 03-00130 MLR-BMK |
| | ) |
| Plaintiff, | ) DEFENDANTS SMF SYSTEMS |
| | ) CORPORATION, TOM CAFFREY |
| vs. | ) AND RUBY CAFFREY'S **MOTION** |
| | ) **FOR SUMMARY JUDGMENT** |
| SMF SYSTEMS CORPORATION, A | ) |
| MARYLAND CORPORATION; TOM | ) |
| CAFFREY; RUBY CAFFREY; DOE | ) |
| CORPORATIONS 1-20; DOE | ) |
| CORPORATIONS 1-20; DOE | ) |
| ENTITIES 1-20; JOHN DOES 1-20; | ) |
| JANE DOES 1-20; GOVERNMENTAL | ) |
| AGENCIES 1-20, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## DEFENDANTS SMF SYSTEMS CORPORATION, TOM CAFFREY AND RUBY CAFFREY'S MOTION FOR SUMMARY JUDGMENT

Defendants SMF SYSTEMS CORPORATION ("Defendant SMF"),

TOM CAFFREY and RUBY CAFFREY (referred herein as "Defendants

Caffrey")(collectively referred herein as "Defendants") hereby move this Court for

summary judgment in their favor as to all counts in Plaintiff JOHN A. MOFFETT

("Plaintiff")'s Complaint filed March 21, 2003.

This motion is brought pursuant to Rules 7 and 56 of the Federal

Rules of Civil Procedure, and it is supported by the attached memorandum, the

concise statement of facts, the declarations and exhibits filed concurrently

69379.v1
0455.002

herewith, the records and files in this case, and such argument as may be presented

on this motion.

DATED:    Honolulu, Hawaii, July 15, 2005.

LYNNE T. T. TOYOFUKU
NICHOLE K. SHIMAMOTO

Attorneys for Defendants
SMF SYSTEMS CORPORATION, TOM
CAFFREY AND RUBY CAFFREY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN A. MOFFETT, | ) CV NO. 03-00130 MLR-BMK |
| Plaintiff, | ) MEMORANDUM IN SUPPORT OF ) MOTION |
| vs. | ) |
| SMF SYSTEMS CORPORATION, A MARYLAND CORPORATION; TOM CAFFREY; RUBY CAFFREY; DOE CORPORATIONS 1-20; DOE CORPORATIONS 1-20; DOE ENTITIES 1-20; JOHN DOES 1-20; JANE DOES 1-20; GOVERNMENTAL AGENCIES 1-20, | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MOTION

69379.v1
0455.002

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................ 1

II.  UNDISPUTED FACTS ......................................................... 3

III. STANDARD OF REVIEW .................................................... 9

IV.  ANALYSIS .................................................................... 10

     A.  Plaintiff's Whistleblower Claim (Count II)
         and Retaliation Claim Under False Claims
         Act Claim (Count VI) Are Barred by the
         Statute of Limitations ........................................... 10

         1.  Plaintiff failed to meet the statute of
             limitations for Count II
             (HRS §§378-62 et seq.) ................................... 10

         2.  Plaintiff failed to meet the statute of
             limitations for Count VI (31 U.S.C.
             §3730(h)) ..................................................... 11

     B.  Plaintiff's Retaliation Claims (Counts I, II, IV
         and VI) Are Barred Because Plaintiff Cannot
         Establish His *Prima Facie* Case As to Any Claim ........... 12

         1.  Plaintiff cannot establish his *prima facie*
             case under Count I (retaliation under 42 U.S.C.
             §§2000e et seq. and HRS §378-2) ...................... 13

             a.  Plaintiff did not engage in protected
                 activity under 42 U.S.C. §§2000e et seq.
                 and HRS §378-2 ................................... 14

        b.      Plaintiff cannot establish a causal link
                  under 42 U.S.C. §§2000e et seq.
                  and HRS §378-2 ............................................................. 17

2.    Plaintiff cannot establish his *prima facie*
       case under Count II (violation of HRS
       §§378-62 et seq.) ................................................................ 20

        a.      Plainitff did not engage in protected
                  activity under HRS §§378-62 et seq.
                  as it was defined prior to April 26, 2002 ....................... 20

        b.      Plaintiff cannot establish a causal link
                  under HRS §§378-62 et seq. ........................................... 22

3.    Plaintiff cannot establish his *prima facie*
       case under Count IV (wrongful retaliatory
       discharge under ERISA) ......................................................... 23

        a.      Plaintiff did not engage in protected
                  activity under ERISA ...................................................... 23

        b.      Plaintiff cannot establish a causal link
                  under ERISA ................................................................... 24

4.    Plaintiff cannot establish his *prima facie*
       case under Count VI (unlawful retaliation
       under 31 U.S.C. §3730(h)) .................................................... 25

        a.      Plaintiff did not engage in any protected
                  activity under 31 U.S.C. §3730(h) ................................ 25

        b.      Plaintiff cannot establish that Defendants
                  knew that Plaintiff engaged in protected
                  activity under 31 U.S.C. §3730(h) ................................ 28

        c.      Plaintiff cannot demonstrate that he was
                  discriminated against because he engaged
                  in protected activity 31 U.S.C. §3730(h) ...................... 30

C.    Plaintiff's Retaliation Claims (Counts I, II, IV
      and VI) Are Barred Because Plaintiff Cannot
      Prove that Defendants' Legitimate Nondiscriminatory
      Reasons for Terminating Plaintiff Were a Pretext
      for Retaliation ............................................................................ 31

D.    Plaintiff's Public Policy Claim (Count III) Is Barred
      Because It Is Already Embodied in Several Statutes ........................ 35

E.    Plaintiff's ERISA Withholding Claims (Count V)
      Is Barred Because Any Error Made Was Not in
      Defendants' Control and Has Already Been Rectified ..................... 36

F.    Plaintiff's IIED Claim (Count VII) Is Barred Because
      Plaintiff Cannot Establish His Prima Facie Case .............................. 38

G.    Plaintiff's NIED Claim (Count VIII) Is Barred
      Because of the Exclusivity Provision of Hawaii's
      Workers' Compensation Statute ....................................................... 40

V.    CONCLUSION ................................................................................ 41

# TABLE OF AUTHORITIES

## *Federal Cases*

*Barber v. CSX Distribution Services*, 68 F.3d 694 (3d Cir. 1995) ........................ 14

*Bragalone v. Kona Coast Resort Joint Venture,*
866 F. Supp. 1285 (D. Haw. 1994).............................................. 38

*Brill v. Lante*, 119 F.3d 1266 (9th Cir. 1997) .......................................... 32

*Celotex v. Catrett*, 477 U.S. 317 (1986).................................................. 9

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ...................................... 18

*Cohen v. Fred Meyer, Inc.*, 686 F.2d 793 (1982) ........................................ 17

*Dupont-Lauren v. Schneider (USA), Inc.,*
994 F. Supp. 802 (S.D. Tex. 1998).................................... 14, 16, 21

*Ellison v. Northwest Airlines, Inc.*, 938 F. Supp. 1503 (D. Haw. 1996) ................ 41

*Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390 (7th Cir. 1999) ............... 19

*Fischbach v. District of Columbia Dept. of Corrections,*
86 F.3d 1180 (D.C.Cir. 1996)........................................................ 33

*Funai v. Brownlee*, 2004 WL 3330839 (D. Hawai`i 2004) ........................... 16, 21

*Graham County Soil & Water Conservation Dist. v. U.S. ex rel Wilson,*
125 S.Ct. 2444 (2005).............................................................. 1, 11

*Gunther v. County of Washington*, 623 F.2d 1303 (9th Cir. 1979) ........................ 17

*Hawkins v. Pepsico, Inc.*, 203 F.3d 274 (4th Cir. 2000)......................................... 34

*Hew-Len v. F.W. Woolworth*, 737 F. Supp. 1104 (D. Haw. 1990)........................ 36

*Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469 (7th Cir. 1995)......... 19, 34

*Kahale v. ADT Auto. Servs., Inc.*, 2 F. Supp. 2d 1295 (D. Haw. 1998).................. 41

*Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989)...................... 12, 24

*LeBlanc v. TJX Companies, Inc.*, 214 F. Supp. 2d 1319 (S.D. Fla. 2002) ............. 33

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..................................... 31

*Moore v. California Institute of Technology Jet Propulsion Laboratory*,
    275 F.3d 838 (9th Cir. 2002) ................................................................ 12, 25

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ................... 11

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099 (9th Cir. 2000)............ 9

*Scaria v. Rubin*, 117 F.3d 652 (2nd Cir. 1997)......................................................... 33

*Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004)................................................... 19, 34

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) ........................................ 32

*Steckl v. Motorola, Inc.*, 703 F.2d 392 (9th Cir. 1983)............................................ 34

*U.S. ex. rel. Yesudian v. Howard Univ.*, 153 F.3d 731 (D.C. Cir. 1998)................ 29

*United States ex rel. Hopper v. Anton*, 91 F.3d 12619 (9th Cir. 1996) ........... passim

*United States ex. rel. Rosales v. San Francisco Housing Auth.*,
    173 F. Supp. 2d 987 (N.D. Cal. 2001)........................................................... 28

*United States v. UNC/LEAR Services, Inc.*,
    2005 WL 639679 (D. Hawai`i 2005)................................................. 1, 10, 11

*Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2004) .......................... 12

*Yap v. Slater*, 165 F. Supp. 2d 1118 (D. Hawai`i 2001) ................................... 16, 21

**State Cases**

*Furukawa v. Honolulu Zoological Soc'y*, 85 Hawai`i 7,
    936 P.2d 643 (Haw. 1997).............................................................................. 40

*Iddings v. Mee-Lee*, 82 Hawai`i 1, 919 P.2d 263 (Haw. 1995) .............................. 40

*Lihosit v. I&W, Inc.*, 121 N.M. 455, 913 P.2d 262 (1996) ..................................... 17

*Millstein v. Henske*, 722 A.2d 850 (D.C. App. 1999)............................................. 17

*Roes v. FHP, Inc.*, 91 Hawai`i 470, 985 P.2d 661 (Haw. 1999).............................. 38

*Ross v. Stouffer Hotel Co.,* 76 Hawai`i 454, 879 P.2d 1046 (1994) ................. 35, 39

*Schefke v. Reliable Collection Agency, Ltd.,*
        96 Hawai`i 408, 32 P.3d 52 (2001) ........................................... 12, 17

*Shoppe v. Gucci, 94 Hawai`i 368, 14 P.3d 1049 (1993)* ............................ 31, 32, 39

*Takaki v. Allied Machinery Corp.,*
        87 Hawai`i 57, 951 P.2d 507 (Haw. App. 1998) ................................ 35

### **Federal Statutes**

29 U.S.C. §1132(a)(1)(B) ................................................................ 36

29 U.S.C. §1140 ......................................................................... 23

42 U.S.C. §2000e-3(a) .................................................................. 13

42 U.S.C. §§2000e (et seq) ....................................................... passim

31 U.S.C. §3730(h) ................................................................ passim

### **State Statutes**

HRS §378-2 ....................................................................... passim

HRS §378-2(2) ......................................................................... 13

HRS §378-62 ...................................................................... passim

HRS §378-63 (2001) .................................................................... 10

HRS §378-63 (2003) .................................................................... 10

HRS §386-3 ............................................................................ 40

HRS §386-5 ............................................................................ 40

### **Federal Rules**

Fed. R. Civ. P. 56(c) ................................................................. 9

Fed. R. Civ. P. 56(e) ................................................................. 9

### *Torts*

Restatement (Second) of Torts §46 cmt J ............................................................. 39

### *Others*

2002 Haw. Sess. Laws, Act 56, §3 ......................................................... 10

2002 Haw. Sess. Laws, Act 56, §5 ................................................. 10, 21

## I.    **INTRODUCTION**

Defendants SMF SYSTEMS CORPORATION ("SMF Systems"),

TOM CAFFREY ("Mr. Caffrey") and RUBY CAFFREY ("Ms. Caffrey")

(collectively referred herein as "Caffreys")(collectively referred herein as

"Defendants") are entitled to summary judgment in their favour as to all claims in

Plaintiff JOHN A. MOFFETT ("Plaintiff")'s Complaint, upon the legal arguments

summarized below:

1.    Plaintiff's whistleblowing claim under HRS §378-62 (Count II)

is time barred as a matter of law because Plaintiff failed to bring his claim prior to

the expiration of the 90-day limitations period that was applicable prior to the 2002

amendment, which became effective on April 26, 2002, over one year after

Plaintiff's termination.  In addition, under the pre-2002 amendment, a report made

to an employer (as opposed to a public body) was not protected under HRS §378-

62 and thus, his alleged complaint made to the Caffreys prior to his termination

was not, as a matter of law, protected conduct under HRS §378-62.

2.    Plaintiff's retaliation under the False Claims Act, 31 U.S.C.

§3730(h) (Count VI), is likewise time barred as a matter of law because, pursuant

to the U.S. Supreme Court's holding in *Graham County Soil & Water*

*Conservation Dist. v. U.S. ex rel Wilson,* 125 S.Ct. 2444, 2453 (2005) and *United*

*States v. UNC/LEAR Services, Inc.*, 2005 WL 639679, at *5 (D. Hawai`i 2005), the

69379.v1
0455.002

statute of limitations under HRS §378-62 applied and Plaintiff failed to bring his claim prior to the expiration of the 90-day limitations period that was applicable prior to the 2002 amendment of HRS §378-62, which became effective on April 26, 2002, over one year after Plaintiff's termination.

3.    Plaintiff's retaliation claims under 42 U.S.C. §§2000e et seq., HRS §§378-2, -62, ERISA, and 31 U.S.C. §3730(h) (Counts I, II, IV and VI) are barred as a matter of law because Plaintiff is unable to demonstrate that he engaged in protected activity or that there is any causal connection between his alleged protected activity and his termination for unprofessional behavior toward Ms. Caffrey, President of SMF Systems.  In addition, Plaintiff cannot prove that his termination was pretext for retaliation.

4.    Plaintiff's "discharge in violation of public policy" claim (Count III) is barred as a matter of law because the claim is already embodied in several statutes.

5.    Plaintiff's wrongful withholding of benefits under ERISA claim (Count V) is barred based upon payment and satisfaction, and because any alleged delay in deposits was outside of Defendants' control.

6.    Plaintiff is unable to prove his Intentional Infliction of Emotional Distress claim (Count VII) because he cannot demonstrate any of the *prima facie* elements (*i.e.*, that the act allegedly causing harm was intentional, that

the act was extreme and outrageous, that Defendants should have recognized that the act was likely to result in emotional injury, and that the emotional injury was severe).

7.    Plaintiff's Negligent Infliction of Emotional Distress claim (Count VIII) is barred because the exclusivity provision of Hawaii's workers' compensation statute precludes employees from filing civil claims against employers based on negligence.

## II.    UNDISPUTED FACTS

From its inception in 1989 until approximately October, 2000, when it sold most of its assets, SMF Systems, with its corporate office in San Ramon, California, was primarily involved with providing computer (IT) products and services to the federal government in various parts of the United States.[1] Thomas Caffrey Deposition ("Ex.O") at 9-10, 16-18.  Ms. Caffrey is the President of SMF Systems and in charge of overseeing the financial and administration functions and Mr. Caffrey was, until 2002, Vice President of SMF Systems in charge of overseeing sales and operations, and field activities.  Ex.O at 18.  Both Ms. Caffrey's and Mr. Caffrey's offices were located at corporate headquarters in San Ramon, California.  Ex.O at 16.

---

[1] All declarations and exhibits are attached to Defendants' Concise Statement of Facts.

Plaintiff was hired on or about June 21, 1999 as a Computer Network Security Analyst/Subject Matter Expert with SMF Systems under a defense contract SMF Systems had with the U.S. Army, its customer, to support the Theater Network Operations Security Center ("TNOSC"), U.S. Army, 516th Signals Brigade, Fort Shafter, Hawaii ("TNOSC contract"). John Moffett Deposition, Vol. 1 ("Ex.A") at 61-62; Ex.B; John Moffett Deposition, Vol. 2 ("Ex.G") at 261. He was considered a technical professional and made approximately $103,000 annually. His responsibilities were technical in nature and did not involve any contract administration duties nor did he supervisor any employees. Ex.A at 61-62; Ex.B.

During the relevant timeframe, from November, 1999 to the Fall, 2000, Robert Nehmad was in charge of overseeing the TNOSC contract and sales in Hawai`i. Mr. Nehmad reported to Richard Kelley, who was the regional manager for SMF Systems. Mr. Kelley reported to Mr. Caffrey. In the Fall, 2000, Robert Langley assumed the responsibilities of overseeing the TNOSC contract. I. Robert Nehmad Deposition ("Ex.R") at 29-30.

On October 4, 2000, Plaintiff drafted an e-mail to Ms. Caffrey, entitled "Request for Assistance," which identified a "leadership problem" in Hawaii on the basis that Plaintiff believed that David Millard, the civil servant charged with contract management, had too much control over the TNOSC

Systems contract. Ex.A at 191; Ex.D. On October 4, 2000, Ms. Caffrey responded to Plaintiff's e-mail with an e-mail stating: "I recommend that you contact Rick Kelley to discuss your concerns as he is the individual in charge of the Hawaii office and operations. Tom Caffrey is out of the office until Monday, October 9. You may contact him next week upon his return." Ex.A at 191; Ex.D. Plaintiff's October 4, 2000 e-mail does not identify the name of the any employee who had complained of sexual harassment nor does the e-mail identify the name of any government official who allegedly engaged in sexual harassment with any employee. Ex.A at 191; Ex.D. Plaintiff did not contact Mr. Caffrey to follow-up on his e-mail dated October 4, 2000. Ex.A at 174. Mr. Caffrey construed the October 4, 2000 e-mail as reflective of Plaintiff's displeasure with Mr. Nehmad, site manager, not as a complaint or report of sexual harassment. Ex.O at 72-73.

On or about October 9, 2000, Plaintiff addressed a complaint to the DoD Hotline about mismanagement of the SMF Systems by civil servant David Millard ("DoD complaint"). The DoD complaint did not make any allegations that SMF Systems submitted false payments or overcharged the government under the TNOSC contract. Ex.G at 303, 306, 308; Ex.A at 191; Ex.E. Plaintiff did not inform Defendants that he had filed the DoD complaint nor does he know of anyone who informed Defendants of the DoD complaint. Ex.A at 191, 194.

In the Fall, 2000, Plaintiff sent e-mails to Robert Langley regarding the "management" of the SMF System's 401(k) plan, which was administered by CitiStreet LLC. Ex.G at 388-89; Exs. K, L.

In or about early March 2001, Plaintiff made several calls to SMF Systems' corporate office in San Ramon, California about an expense report reimbursement for a recent job-related trip he had taken. Some time after his telephone call to SMF Systems' headquarters, Plaintiff learned that the person with whom he spoke was Ms. Ruby Caffrey. Ex.A at 151-52; Ex.C; Ex.G at 315; Ex.I.

On or about March 22, 2001, while on a business trip to Hawaii, Mr. Caffrey terminated Plaintiff's employment with SMF Systems on the basis of his unprofessional and obnoxious behavior on the telephone with Ms. Caffrey. Ex.A at 151-52; Ex.C; Ex.G at 315; Ex.I; Ex.O at 91, 106; Ex.P. The termination was pursuant to and consistent with SMF Systems' policies prohibiting rude and unprofessional behavior towards managers.[2] Ex.A at 259; Ex.H. Mr. Caffrey made the decision to terminate Plaintiff without input from Mr. Kelley or Mr. Langley because the termination was based upon Plaintiff's conduct with the corporate office. Ex.O at 91. Mr. Caffrey has terminated other employees for

---

[2] At the commencement of his employment, Plaintiff received a copy of the "SMF Systems Corporation Employee Orientation Package," which contained policies regarding employee conduct and the consequences for violation of same, including specifically that an employee may be terminated for "an unwarranted demonstration of disrespect to a supervisor or manager . . ." Ex. A at 259; Ex. H.

unprofessional and/or rude and/or obnoxious behavior as follows: George Bowns, Blane Cowart, William Matt King, and Barney Tobe Henry.  Ex.O at 102-04.

Prior to terminating Plaintiff, neither Mr. Caffrey nor Ms. Caffrey were aware of Plaintiff's DoD complaint.  Ex.O at 83-84; Ruby Caffrey Deposition ("Ex.Q") at 62-63.  Prior to terminating Plaintiff, neither Mr. Caffrey nor Ms. Caffrey were aware of the Fall, 2000 e-mails sent to Mr. Langley.  Ex.O at 143-44; Ex.Q at 112-14.

*After* his termination, Plaintiff did the following:

- On May 14, 2001, Plaintiff wrote a letter to the Pension and Welfare Benefits Administration ("PWBA") accusing SMF Systems of "mismanagement" of his 401(k) account.  Ex.G at 380; Ex.J.

- On May 16, 2001, Plaintiff transmitted a complaint to the DoD Hotline asserting that he was retaliated against by Mr. Caffrey for filing his October 9, 2000 DoD complaint.  Ex.G at 315; Ex.I.

- On September 19, 2001, Plaintiff filed a charge against Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC") and concurrently with the Hawaii Civil Rights Commission ("HCRC"), alleging that his retaliation was a result of his complaint of sexual harassment against Moncia Nelson ("EEOC complaint").[3]  Ex.A at 151-52; Ex.C.

- On March 19, 2002, Plaintiff filed a second charge against Defendants with the EEOC and concurrently with the HCRC asserting that SMF System's September 21, 2001 request for reimbursement for tuition costs incurred by Plaintiff was in

---

[3] SMF Systems, however, did not receive a copy of the EEOC complaint until the week of September 24, 2001 or later.  Declaration of Ruby Caffrey at ¶4.

retaliation for the filing of the EEOC complaint.  Ex.G at 399;
Ex.N.

- On March 21, 2003, Plaintiff filed the present Complaint in the
  United States District Court for the District of Hawaii.
  Declaration of Nichole Shimamoto at ¶3.

On June 4, 2002, Mel Huey, Senior Investigator, Department of

Labor, PWBA, wrote to Plaintiff, stating, "Our records indicate that you were

notified telephonically on December 21, 2001 that the investigation was completed

and that SMF Systems, Inc. agreed to restore lost interest to the Plan due to making

delinquent employee contributions.  You were advised that your share of the lost

interest was $150.  This payment to participants' accounts was confirmed and

verified by CitiStreet LLC on February 11, 2002.  The telephone notification on

December 21, 2001 constituted the report of results of the investigation with

respect to you.  You may consider this letter as the final written report to you."

Ex.G at 388-89; Ex.L.

On December 16, 2003, Plaintiff received a letter from M. Jane

Deese, Director, Military Reprisal Investigations, informing Plaintiff that the DoD

completed an investigation into Plaintiff's reprisal allegations (May 16, 2001

complaint) and concluded that the "adverse personnel actions were not taken

against [Plaintiff] in reprisal for [his] protected disclosures."  Enclosed with the

letter was a copy of the "Report of Investigation" wherein the DoD specifically

concluded that "the responsible management officials were not aware of

[Plaintiff]'s protected disclosures before taking adverse personnel actions against him," that there was "no credible evidence that the responsible officials were aware of [Plaintiff]'s protected disclosures before terminating his employment," and that "the responsible officials would have taken the same actions absent the protected disclosures." Ex.A at 211-12.

## III.    <u>STANDARD OF REVIEW</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party satisfies its initial burden of production by producing evidence that either negates an essential element of the non-moving party's case or demonstrates that the non-moving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party makes its initial showing, the burden shifts to the non-moving party to go beyond the pleadings and to "designate *specific facts* showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added). If the non-moving party fails to so respond, summary judgment must be entered against him. Fed. R. Civ. P. 56(e).

## IV.    ANALYSIS

### A.    Plaintiff's Whistleblower Claim (Count II) and Retaliation Claim Under False Claims Act Claim (Count VI) Are Barred by the Statute of Limitations

#### 1.    Plaintiff failed to meet the statute of limitations for Count II (HRS §§378-62 et seq.)

Plaintiff failed to bring his HRS §378-62 whistleblowing claim within the applicable statute of limitations.  The limitations period for claims under HRS §378-62 was, until April 26, 2002, ninety days from the alleged violation of the act.  *See* HRS §378-63 (2001).  The limitations period was extended from ninety days to two years, effective April 26, 2002.  *See* HRS §378-63 (2003) (amended by 2002 Haw. Sess. Laws, Act 56, §3).  In extending the limitations period, the legislature expressly stated that "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date."  *See* 2002 Haw. Sess. Laws, Act 56, §5.  Thus, any claim that arose prior to April 26, 2002 is subject to the ninety-day limitations period.  *See UNC/LEAR Services, Inc.*, 2005 WL 639679, at *5 (applying a ninety-day limitations period to an analogous statute for a claim that arose prior to April 26, 2002).

In the present case, Plaintiff was terminated on March 22, 2001.  Thus, Plaintiff's whistleblower claim expired on June 20, 2001, ninety days later.  Because Plaintiff failed to file his Complaint until March 21, 2003, almost two

years later, his claim under HRS §378-62 is outside of the applicable statute of

limitations and thus barred as a matter of law.[4]  Accordingly, judgment should be

granted against Plaintiff as to Count II.

> ## 2.    Plaintiff failed to meet the statute of limitations for Count VI (31 U.S.C. §3730(h))

Plaintiff's retaliation claim under the False Claims Act (31 U.S.C.

§3730(h)) is likewise barred by the statute of limitations under Rev. Stat. §378-62

as a retaliation claim under 31 U.S.C. §3730(h) is subject to the statute of

limitations applicable under the Hawaii Whistleblowers' Protection Act.  *See*

*UNC/LEAR Services, Inc.*, 2005 WL 639679, at *5 ("The Court finds that the

Hawaii Whistleblowers' Protection Act provides the state cause of action that is

most closely analogous to a 31 U.S.C. §3730(h) claim for retaliatory discharge.

Thus, the Court will apply a 90-day statute of limitations to Plaintiff's claim for

retaliatory discharge under 31 U.S.C. §3730(h)."); *see also Wilson*, 125 S.Ct. 2453

---

[4] Plaintiff cannot point to events occurring after his termination to meet the statute of limitations.  It is axiomatic that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  As explained by the U.S. Supreme Court, the continuing violation doctrine does not apply where alleged discrimination consists of discrete acts, such as "termination, failure to promote, denial of transfer, or refusal to hire," each of which "starts a new clock for filing charges alleging that act.  *See id.* at 113-14.  Stated differently, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *See id.* at 112.

(holding that "[t]he most closely analogous state statutes of limitations" applies to §3730(h) actions).

For the same reasons that Plaintiff's claim under HRS §378-62, is barred by the applicable statute of limitations, Defendants are entitled to judgment in their favor and against Plaintiff as to Count VI.

**B.**    **Plaintiff's Retaliation Claims (Counts I, II, IV and VI) Are Barred Because Plaintiff Cannot Establish His *Prima Facie* Case As to Any Claim**

The Ninth Circuit has held that, to establish a *prima facie* case of retaliation, a plaintiff must show:

    (1)    that he was engaged in a protected activity;

    (2)    that he suffered an adverse employment decision; and

    (3)    that there was a causal link between the protected activity and the adverse employment decision.

*Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2004) (examining Title VII claims); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989) (examining ERISA claims). The Hawai`i Supreme Court has adopted this three-part test for proving discriminatory retaliation claims. *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 32 P.3d 52 (2001) (examining HRS ch. 378 claims). Finally, the *prima facie* case for retaliation claims under the False Claims Act 31 U.S.C. §3730(h) is substantially similar to this three-part test, except that it includes a separate knowledge requirement. *Moore v. California*

*Institute of Technology Jet Propulsion Laboratory*, 275 F.3d 838 (9th Cir. 2002)

(examining claims under 31 U.S.C. §3730(h)).[5]

### 1. **Plaintiff cannot establish his *prima facie* case under Count I (retaliation under 42 U.S.C. §§2000e et seq. and HRS §378-2)**

Plaintiff brings a claim of retaliation against Defendants under 42

U.S.C. §§2000e et seq. ("Title VII"), which prohibits an employer from

discriminating against an employee because he has opposed any practice made

forbidden under the Equal Employment Opportunities subchapter of Title VII, or

has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the Equal Employment Opportunities

subchapter of Title VII. See 42 U.S.C. §2000e-3(a). Plaintiff also brings a claim

of retaliation against Defendants under HRS §378-2(2), which prohibits an

employer from discriminating against an individual because the individual has

opposed any practice forbidden by part 1 of Chapter 378 or has filed a complaint,

testified, or assisted in any proceeding respecting the discriminatory practices

prohibited by part 1 of Chapter 378. HRS §378-2(2).

---

[5] In *Moore*, 275 F.3d 838, the Ninth Circuit stated,

> An employee must prove three elements in a § 3730(h) retaliation claim: (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because [he] engaged in protected activity.

a. **Plaintiff did not engage in protected activity under 42 U.S.C. §§2000e et seq. and HRS §378-2**

Plaintiff's sole piece of credible evidence of his opposition to a practice made unlawful by either Title VII or Hawaii's discrimination statutes is an e-mail he sent to Ms. Caffrey dated October 4, 2000.[6] Ex.A at 191; Ex.D. As a matter of law, the contents of the e-mail are insufficient to constitute protected activity in opposition to employment discrimination under Title VII or Hawaii's discrimination law.

First, Plaintiff's e-mail is too vague to constitute protected activity. In determining whether opposition constitutes protected activity, "[v]agueness as to the nature of the grievance . . . prevents a protest from qualifying as a protected activity." *See Dupont-Lauren v. Schneider (USA), Inc.*, 994 F. Supp. 802, 823 (S.D. Tex. 1998). An e-mail that contains only general assertions of improper activity are not sufficiently specific to constitute statutorily protected opposition to an unlawful employment practice. *See e.g., Barber v. CSX Distribution Services*, 68 F.3d 694 (3d Cir. 1995) (holding that the plaintiff's letter was "just too vague" and "[did] not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation"). Here, Plaintiff's October 4, 2000 e-mail, entitled "Request for

---

[6] Plaintiff may also allege that his complaints to the DoD Hotline are protected activity. For a discussion explaining why the DoD Hotline complaints cannot support Plaintiff's retaliation claim, please see discussion sections IV.B.2 and IV.B.4, *infra*.

Assistance," focuses on Plaintiff's belief that there is a "leadership problem [at the company] and that problem is Robert Nehmad."[7] Ex.A at 191; Ex.D.  As an example of the leadership problem, he claims that "Employees have come to [Robert Nehmad] with complaints of sexual harassment by government officials, and he as [sic] done nothing, or suggested that they find work elsewhere.  These actions place SMF in hazardous legal territory."  Ex.A at 191; Ex.D.  Although Plaintiff uses the term "sexual harassment," he does nothing further to oppose sexual harassment or any practice made unlawful by federal or state discrimination laws; indeed, he does not even identify who was allegedly harassed or what comprised the alleged sexual harassment conduct. The e-mail does not even assert that the alleged "victim" is an SMF System's employee.  Thus, the contents of Plaintiff's e-mail are too vague to be construed as opposition to employment discrimination; rather, a reasonable interpretation of the e-mail contents is Plaintiff conveying his dissatisfaction with the leadership of Robert Nehmad.

Additionally, Plaintiff is opposing conduct of individuals other than Defendants.  "An employee's statement cannot be deemed to be in opposition to an unlawful employment practice unless it refers to a specific practice *of the employer*

---

[7] Plaintiff writes in the first substantive paragraph, "I am very concerned about the deterioration of SMF out here in Hawaii.  I could go on with a list of symptoms, but I believe it is a leadership problem and that problem is Robert Nehmad.  I am not alone in my frustration, nor my identification of the problem."  Ex. A at 191; Ex. D.

that is allegedly unlawful." *See Dupont-Lauren*, 994 F. Supp. at 823 (emphasis added). That is, an employee's opposition "must be directed at an unlawful employment practice of *an employer*[.]" *See Funai v. Brownlee*, 2004 WL 3330839, at *5 (D. Hawai`i 2004) (emphasis added); *see also Yap v. Slater*, 165 F. Supp. 2d 1118, 1127 n.6 (D. Hawai`i 2001) ("[A]n employee's actions must oppose an employment practice of *the employer*.") (emphasis added). As discussed above, Plaintiff's sole reference to conduct that could be construed as sexual harassment discrimination is his statement that "Employees have come to [Robert Nehmad] with complaints of sexual harassment *by government officials*[.]" (Emphasis added.) Ex.A at 191; Ex.D. Even on the face of Plaintiff's e-mail, the alleged sexual harassment was not conduct attributable to Defendants. In Plaintiff's own words, the alleged harassers were employees of the government. Thus, Plaintiff's e-mail cannot be construed as opposition "directed at an unlawful employment practice [sexual harassment discrimination] of an employer [SMF Systems]."

Plaintiff's vague mention of sexual harassment by individuals other than Defendants in the middle of a single e-mail is not sufficient to establish his engagement in protected activity. Accordingly, Plaintiff cannot establish the first element of his *prima facie* case and judgment should be granted against Plaintiff as to Count I.

**b.**    **Plaintiff cannot establish a causal link under 42 U.S.C. §§2000e et seq. and HRS §378-2**

Even assuming for purposes of this Motion only that Plaintiff did engage in protected activity (which he did not), Plaintiff cannot establish as a matter of law a causal link between his opposition and his termination by Mr. Caffrey. The "crux of a retaliation claim is a causal connection between an adverse personnel action and protected opposition activity." *Millstein v. Henske*, 722 A.2d 850, 855 (D.C. App. 1999); *see also Schefke*, 96 Hawai`i at 426 (holding that the plaintiff is required to present evidence demonstrating a causal link exists between the protected activity and the adverse action).

First, neither Mr. Caffrey nor Ms. Caffrey knew of any protected activity *prior* to Plaintiff's termination. Ex.A at 191, 192; Ex.D at 102-04; Ex.Q at 62-63. "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (1982) (citation omitted). Indeed, it is axiomatic that "an employer cannot fire an employee in retaliation for actions of which the employer is unaware." *See Lihosit v. I&W, Inc.*, 121 N.M. 455, 458, 913 P.2d 262, 265 (1996); *see also Gunther v. County of Washington*, 623 F.2d 1303, 1316 (9th Cir. 1979). In the present case, Plaintiff has no evidence of any sort that would indicate any belief on the part of either Mr. Caffrey or Ms. Caffrey that they had knowledge of any alleged protected activity. Ex.A at 191, 194. In contrast, both Mr. Caffrey

and Ms. Caffrey testified that prior to the initiation of this lawsuit, they did not interpret Plaintiff's October 2000 e-mail as opposing discrimination on the basis of sexual harassment. Ex.O at 72-73; Ex.Q at 63; Ex.E. Specifically, Ms. Caffrey testified that although she does not recall receiving the e-mail, her actions were consistent with what she would normally do – that is, as soon as she determined that Plaintiff's e-mail did not fall within the finances and payroll for which was responsible, she forwarded the e-mail to Mr. Caffrey. Ex.Q at 58. Mr. Caffrey testified that he interpreted Plaintiff's e-mail as expressing dissatisfaction with Robert Nehmad and that there was nothing in the e-mail that caused him to believe that Plaintiff was opposing sexual harassment. Ex.O at 72-73. Thus, Plaintiff is unable to establish a causal connection between his alleged protected activity and his termination for unprofessional behavior.

Additionally, the substantial time lapse between Plaintiff's alleged protected activity and his termination is counter-evidence of any causal link. A period of as little as four months is counter-evidence of a causal link. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curium) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" finding that a 3-month or 4-month period was insufficient);

*Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390 (7th Cir. 1999) (four-month delay was "counter-evidence" of causal inference); *Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995) ("substantial time lapse between events is counter-evidence of any causal connection"), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004).  In the present case, Plaintiff's e-mail to Ms. Caffrey is dated October 4, 2000.  Ex.A at 191; Ex.D. Plaintiff was terminated on March 22, 2001, more than five months after he e-mailed Ms. Caffrey.  This time lapse is counter-evidence of any causal link.

Further, during this timeframe, SMF Systems was continuing to send Plaintiff to various training sessions which involved significant expenditures of capital.  Ex.G at 315; Ex.I.  Plaintiff admits in his DoD Hotline complaint:

> **7 – 13 January 2001:** I travel to Austin, Texas to receive training at Sun Microsystems' training facility.  It is important to note that at this time, both the government and SMF are *still* making significant investments in me: this is my third week of off-site training in a little over four months.

Ex.G at 315; Ex.I.  This clearly supports Plaintiff's inability to establish a causal connection between his alleged protected activity in October 2000 and his termination over five months later.

Indeed, Plaintiff is simply unable to establish a causal link between his October 2000 e-mail (which the Caffreys did not view as opposition to employment discrimination) and his termination more than six months later.

Accordingly, Plaintiff cannot establish the third element of his *prima facie* case and judgment should be granted against Plaintiff as to Count I.

**2.    Plaintiff cannot establish his *prima facie* case under Count II (violation of HRS §§378-62 et seq.)**

Plaintiff brings a claim of retaliation against Defendants under HRS §§378-62 et seq., which prohibits an employer from taking an adverse employment action against an employee because he reported (or was about to report) a violation or suspected violation of a state or federal law, rule, ordinance, or regulation.  As discussed above, *see* section IV.A.1, Count II should be dismissed because Plaintiff failed to meet the applicable statute of limitations. However, even if Plaintiff had timely brought his claim under HRS §§378-62 et seq., Plaintiff's claim would still fail because, as discussed below, he cannot establish his *prima facie* case.

**a.    Plainitff did not engage in protected activity under HRS §§378-62 et seq. as it was defined prior to April 26, 2002**

Plaintiff cannot demonstrate that he engaged in protected activity because prior to April 26, 2002, Hawai`i's Whistleblowers' Protection Act limited the definition of "protected activity" to the reporting or anticipated reporting to a public body of a violation or suspected violation of the law.  *See* HRS §378-62 (2001).  Alternatively stated, it did not extend protection to internal complaint reporting until April 26, 2002.  And when it did, the legislature expressly stated

that "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date." *See* 2002 Haw. Sess. Laws, Act 56, §5. Thus, any claim that arose prior to April 26, 2002 must involve a complaint or made to a public body. As such, as a matter of law, Plaintiff's October 2000 e-mail does not qualify as "protected activity" under Hawai`i's Whistleblowers' Protection Act.

Plaintiff's sole piece of evidence upon which his claim of protected activity rests is a letter that he wrote to the DoD Hotline on October 9, 2000. Ex.A at 191; Ex.E. However, Plaintiff's DoD Hotline complaint, like his October 2000 e-mail, opposes conduct of individuals other than Defendants. As explained above, "[a]n employee's statement cannot be deemed to be in opposition to an unlawful employment practice unless it refers to a specific practice *of the employer* that is allegedly unlawful." *See Dupont-Lauren*, 994 F. Supp. at 823 (emphasis added); *see also Funai*, 2004 WL 3330839, at *5; *Yap*, 165 F. Supp. 2d at 1127 n.6. Plaintiff's entire DoD Hotline complaint is focused on the "mismanagement" of David Millard. David Millard was an employee of the U.S. government, not Defendants. Plaintiff makes only a single passing reference to Defendants: "I believe that SMF Systems, an 8(a) contractor, is inexperienced in working with the government and is reluctant to confront *the government about these issues* because they fear loss of this contract." Ex.A at 191; Ex.E.  (emphasis added). Thus, by

Plaintiff's own words, the issues that he identified in his DoD Hotline complaint are issues that he has with the government, and not Defendants.

Even if Plaintiff had brought his HRS §378-62 claim within the applicable statute of limitations, he fails to establish with any credible evidence that he engaged in protected activity under that statute as it was defined prior to April 26, 2002. Accordingly, even if Plaintiff's claim is not barred by the statute of limitations, judgment should be granted against Plaintiff as to Count II.

**b.** **Plaintiff cannot establish a causal link under HRS §§378-62 et seq.**

Additionally, even if Plaintiff did engage in protected activity with his October 9, 2000 letter to DoD, Plaintiff is unable as a matter of law to establish a causal link between his protected activity in October, 2000 and his termination in March, 2001.

It is undisputed that the Caffreys were unaware of Plaintiff's October 2000 letter to DoD prior to March 22, 2001. Ex.O at 83-84; Ex.Q at 62-63. Moreover and significantly, the Office of the Inspector General of the DoD completed an investigation into Plaintiff's May 16, 2001 reprisal and whistleblowing allegations. Ex.A at 205; Ex.F. The DoD concluded that the personnel actions were not taken against Plaintiff in reprisal for his protected disclosures to the DoD because "the responsible management officials [Caffreys] were not aware of [Plaintiff]'s protected disclosures before taking adverse

personnel actions against him." Ex.A at 205; Ex.F. The DoD's Report of

Investigation references *numerous* interviews that were conducted, all of which

supported the DoD's conclusion that there was "no credible evidence that the

responsible officials were aware of [Plaintiff]'s protected disclosures before

terminating his employment." Ex.A at 205; Ex.F. Thus, the DoD conclusively

determined that "the responsible officials would have taken the same actions

absent the protected disclosures." *See id.* To date, Plaintiff has not been able to

provide any evidence whatsoever to support a different conclusion.

Accordingly, Plaintiff cannot demonstrate a causal link under HRS

§378-62 and judgment should be granted against Plaintiff as to Count II.

3.    **Plaintiff cannot establish his *prima facie* case under Count IV (wrongful retaliatory discharge under ERISA)**

Plaintiff brings a claim of wrongful retaliatory discharge under

ERISA. Section 540 of ERISA, 29 U.S.C. §1140, prohibits an employer from

taking any adverse employment action against any employee "for exercising any

right to which he is entitled under the provisions of an employee benefit plan . . . ."

In the present case, Plaintiff alleges that he was discharged from employment after

raising questions about the delay in "deposit of his employee contributions to his

401(k) retirement plan." *See* Complaint ¶¶ 19, 55-56.

a.    **Plaintiff did not engage in protected activity under ERISA**

Plaintiff did not engage in protected activity under ERISA. Besides his May 14, 2001 letter to the Pension and Welfare Benefits Administration (PWBA) almost two months **after** he was terminated, the only evidence he has offered that discusses ERISA is a string of e-mails to Mr. Langley that asked questions about deductions. Ex.G at 388; Ex.K. First, neither Mr. Caffrey nor Ms. Caffrey were aware of these e-mails prior to Plaintiff's termination. Ex.A at 191; Ex.O at 143-44; Ex.Q at 112-14. Second, even if they were aware of these e-mails, there is nothing in these e-mails that could constitute protected activity. Specifically, the e-mail requests, "Could SMF give it's [sic] employees a briefing on the management of the 401-K?" Ex.G at 388; Ex.K. Accordingly, Plaintiff cannot establish that he engaged in protected activity under ERISA.

### b.     Plaintiff cannot establish a causal link under ERISA

Plaintiff cannot establish a causal link under ERISA. "To recover under §1140, plaintiff must show that defendant terminated him with the 'specific intent' to interfere with his rights under defendant's benefits plans." *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989) (citation omitted). It is undisputed that prior to his termination, Mr. Caffrey did not know of the subject e-mail or even of any concerns that Plaintiff had regarding his rights under ERISA. Ex.O. at 143-44. Accordingly, Plaintiff cannot establish his *prima facie* case for ERISA retaliation and judgment should be granted against Plaintiff as to Count IV.

4. **Plaintiff cannot establish his *prima facie* case under Count VI (unlawful retaliation under 31 U.S.C. §3730(h))**

Plaintiff brings a claim of retaliation in violation of the False Claims Act. Section 3730(h) of the False Claims Act provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, . . . shall be entitled to all relief necessary to make the employee whole.

As discussed above, *see* section IV.A.2, Count VI should be dismissed because Plaintiff failed to meet the applicable statute of limitations. However, even if Plaintiff had timely brought his retaliation claim under 31 U.S.C. §3730(h), Plaintiff's claim would still fail because, as discussed below, he cannot establish his *prima facie* case.

a. **Plaintiff did not engage in any protected activity under 31 U.S.C. §3730(h)**

None of Plaintiff's allegations constitute protected activity under 31 U.S.C. §3730(h). "[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore*, 275 F.3d at 845. Significantly, "[s]ection 3730(h) only protects employees who have acted 'in furtherance of an action'

under the FCA." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996). The plaintiff "must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *Id.* As explained by the Ninth Circuit,

> The FCA was enacted during the Civil War with the purpose of forfending widespread fraud by government contracts who were submitting inflated invoices and shipping faulty goods to the government. In furthering this goal, the Act attaches liability, not to underlying fraudulent activity, but to the claim for payment. *What constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false.*

*Id.* at 1263 (emphasis added). Thus, if an employee's complaint does not involve a belief that his employer is defrauding the federal government by making a false claim for payment, there is no FCA protected activity, even if the employee is otherwise complaining vigorously about the employer's non-compliance with various regulations. *Id.* (holding that, despite plaintiff's claim that the School District engaged in a "false certification of compliance with federal law," plaintiff failed to allege that the fraudulent activity was pursuant to a claim for payment).

Here, Plaintiff has no evidence to demonstrate that he was engaged in "furtherance of an action" under the FCA or that he was investigating a matter that could reasonably lead to a viable FCA action. In his Complaint, Plaintiff alleges that he spoke or wrote to various representatives of SMF Systems to raise concerns over conduct and activities that he believed were "improper or illegal, such as

David Millard's inappropriate control over hiring, firing and wage determination of Defendant SMF's employees." *See* Complaint ¶ 14.  As discussed in section IV.B.1.a, *supra*, Plaintiff's October 4, 2000 e-mail was entitled "Request for Assistance" and the tenor of the e-mail does not appear to focus on illegal conduct so much as to express dissatisfaction with particular individuals (i.e., Robert Nehmad and David Millard). Ex.A at 191; Ex.D.  More importantly, the e-mail has nothing to do with any alleged fraudulent claims for payment from the government.  Thus, this e-mail, to the extent that its contents were even considered by Defendants, does not constitute the type of report protected by 31 U.S.C. §3730(h).

Plaintiff also alleges that he contacted the DoD Hotline to complain about, *inter alia*, the lack of task orders, the lack of a Project Leader, Mr. Millard's instructions to the contractors that they were expected to work more than forty hours per week but are not to report those excess hours of work, and Mr. Millard's inappropriate control over the hiring, firing, wages, raises and bonuses of SMF's employees. *See* Complaint ¶ 15.  A reading of Plaintiff's DoD Hotline letter complaint quite clearly shows that Plaintiff was merely attempting to complain about the "mismanagement" of David Millard, a civil servant employed by the government, not Defendants. Ex.A at 191; Ex.E.  Plaintiff was not trying to recover money for the government, was not investigating fraudulent claims for

government payment, and was not whistleblowing under the FCA. *See id.*; *see also* Plaintiff's Tr. at 303, 306, 308. Indeed, the only statement in Plaintiff's DoD Hotline complaint that even remotely relates to government payment is an allegation that Defendants are *undercharging* the government for services rendered. Ex.A at 191; Ex.E.

In short, Plaintiff misinterprets the breadth of the FCA. "Violations of laws, rules, or regulations alone do not create a cause of action under the FCA." *See Hopper*, 91 F.3d at 1266. Because Plaintiff failed to allege that Defendants engaged in activity that could constitute a "false claim" for government payment, Plaintiff did not engage in protected activity under 31 U.S.C. §3730(h).

**b.    <u>Plaintiff cannot establish that Defendants knew that Plaintiff engaged in protected activity under 31 U.S.C. §3730(h)</u>**

Further, even if Plaintiff was engaging in protected activity, as a matter of law, Plaintiff cannot demonstrate that Defendants had knowledge of his alleged protected activity. Where there is no evidence that the employer was aware of the plaintiff's FCA-related activities, an FCA retaliation claim will be dismissed. *See United States ex. rel. Rosales v. San Francisco Housing Auth.*, 173 F. Supp. 2d 987 (N.D. Cal. 2001) (no evidence of employer knowledge, where plaintiffs merely alleged that they "believe" the employer's actions were retaliatory; "no reasonable jury could conclude, based on the scant evidence cited

here, that defendants knew of plaintiff's activities, let alone that they retaliated based on such activities"); *Hopper*, 91 F.3d at 1269 ("The legislative history clearly provide that a 'whistleblower must show the employer had knowledge the employee engaged in 'protected activity.'" (citation omitted)).

With respect to Plaintiff's October 2000 e-mail, as discussed in section IV.B.1.b, *supra*, Plaintiff cannot establish a causal link between that e-mail and his termination more than six months later. *See U.S. ex. rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 743 (D.C. Cir. 1998) (A plaintiff "must show that his employer was aware of his protected activity. Merely grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the requirement--just as it does not constitute protected activity in the first place."). Moreover, with respect to Plaintiff's DoD Hotline letter, as discussed above, *see* discussion section IV.B.2.b, *supra*, there is no evidence that Defendants were aware of Plaintiff's DoD Hotline complaint <u>prior</u> to his termination. Ex.A at 191, 194; Ex.O at 83-84; Ex.Q at 62-63. Indeed, the Office of Inspector General of the DoD, after thoroughly investigating Plaintiff's whistleblower reprisal claim of May 18, 2001, came to the conclusions that "*responsible management officials were not aware of Mr. Moffett's protected disclosures before taking adverse personnel actions against him.*" Ex.A at 205; Ex.F (emphasis added).

Moreover, Mr. Caffrey has affirmatively testified that he did not have knowledge or the DoD letter prior to his termination of Plaintiff. Ex.O at 83-84.

Accordingly, Plaintiff cannot demonstrate that Defendants had knowledge of any alleged protected activity prior to Plaintiff's termination, and judgment should be granted against Plaintiff as to Count VI.

> **c.** **Plaintiff cannot demonstrate that he was discriminated against because he engaged in protected activity 31 U.S.C. §3730(h)**

Plaintiff cannot demonstrate a causal link under 31 U.S.C. §3730(h). "[U]nless the employer is aware that the employee is investigating fraud, the employer could not possess the retaliatory intent necessary to establish a violation of §3730(h)." *Hopper*, 91 F.3d at 1269. As discussed above, *see* discussion section IV.B.2.b, Plaintiff has no evidence to demonstrate a casual link between his DoD Hotline complaint and his termination. Indeed, the Office of Inspector General of the DoD, after thoroughly investigating Plaintiff's whistleblower reprisal claim of May 18, 2001, came to the conclusions that "*responsible management officials were not aware of Mr. Moffett's protected disclosures before taking adverse personnel actions against him*." Ex.A at 205; Ex.F. (emphasis added).

Accordingly, Plaintiff cannot demonstrate a causal link under 31 U.S.C. §3730(h), and judgment should be granted against Plaintiff as to Count VI.

**C.     Plaintiff's Retaliation Claims (Counts I, II, IV and VI) Are Barred Because Plaintiff Cannot Prove that Defendants' Legitimate Nondiscriminatory Reasons for Terminating Plaintiff Were a Pretext for Retaliation**

Even if Plaintiff demonstrates a *prima facie* case of retaliation as to any claim, Plaintiff cannot as a matter of law demonstrate that Defendants' legitimate non-discriminatory reasons for terminating Plaintiff were a pretext for retaliation. Plaintiff was terminated by Mr. Caffrey for the simple and unremarkable fact that he was unprofessionally rude to the Company President. Ex.O at 91, 106; Ex.P. Mr. Caffrey testified that he had, on several prior occasions, terminated employees for single, isolated instances of unprofessional conduct. Ex.O at 102-04. The terminations of Plaintiff, Ms. Henry, Mr. Cowart, Mr. Bonus, Mr. King, and Mr. Wadsworth are consistent with Company policy. Ex.G at 259; Ex.H. Thus, Defendants had legitimate non-discriminatory reasons for terminating Plaintiff.

Because Defendants can establish a legitimate, non-discriminatory reason for their actions, "the burden reverts to the plaintiff to demonstrate that the defendant's proffered reasons were pretexual." *Shoppe v. Gucci*, 94 Hawai'i 368, 379, 14 P.3d 1049, 1060 (1993).[8] To demonstrate pretext, Plaintiff must do more

---

[8] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the U.S. Supreme Court developed a three-part framework for allocating the burdens and analyzing the development of proof in an employment discrimination case: First, the plaintiff must demonstrate that there was discrimination on the basis of a protected

than prove that the Company's stated reason is false; Plaintiff must also prove that the real reason for the Company's action is discriminatory. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993) ("a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").

Here, the absence of pretext is reinforced by four points: First, there has *never* been any instance where Defendants tolerated a similar instance of unprofessional behavior to the Ms. Caffrey. Ex.O at 102-04. Indeed, as indicated above, the evidence demonstrates a consistent practice of terminating employees for unprofessional behavior even where it was directed at an individual other than the Company President. Ex.O at 102-04. Thus, in terminating Plaintiff for unprofessional behavior, Mr. Caffrey treated Plaintiff similarly to other employees who were also terminated for unprofessional conduct towards management.

Second, it is universally recognized that a court will not second-guess business decisions made by an employer. *See Brill v. Lante*, 119 F.3d 1266, 1272 (9th Cir. 1997) ("Courts refuse to sit in judgment as super-personnel departments

---

characteristic. Next, the burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. Finally, the burden returns to the plaintiff to show that the defendant's explanation was pretextual. Plaintiff at all times retains the ultimate burden of persuasion that the Company intentionally discriminated or retaliated against him. *See, e.g., Hicks*, 509 U.S. at 518. The Hawai`i Supreme Court adopted the *McDonnell Douglas* burden-shifting analysis. *See, e.g., Shoppe*, 94 Hawai`i at 378-81, 14 P.3d at 1059-62.

overseeing corporate decisions"); *Scaria v. Rubin*, 117 F.3d 652 (2nd Cir. 1997)

("This Court does not sit as a super-personnel department that reexamines an

entity's business decisions"). The effect of this is that, even if an employer's

reason for termination is shown to be inaccurate or mistaken, the reason still does

not become a pretext for discrimination. *See Fischbach v. District of Columbia*

*Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir. 1996) ("Once the employer has

articulated a non-discriminatory explanation for its action . . . the issue is not the

correctness or desirability of the reasons offered but whether the employer honestly

believes in the reasons it offers," even if such "reasons are foolish or trivial or even

baseless"). Thus, in the present case, even if most other people would consider

termination too severe for Plaintiff's conduct (which they would not, *see*

discussion *infra*), this still does not demonstrate that his discharge was

discriminatory.

Third, even if one were to second-guess Defendants' business

decision, termination was reasonable given Plaintiff's conduct. There is nothing

inherently incredible about Mr. Caffrey discharging an employee, even an

employee with a favorable employment history, for engaging in unprofessional

conduct to the Company President or any other Company employee. *See, e.g.,*

*LeBlanc v. TJX Companies, Inc.*, 214 F.Supp.2d 1319, 1326-27 (S.D.Fla.2002) (in

race and age discrimination and retaliation case, sales clerk's rude behavior toward

co-workers and customers constituted legitimate ground for discharge).

Fourth, Plaintiff cannot establish pretext where he has nothing more

than his own conjecture and speculation to support his claim of retaliation. *See*

*Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995) (employee's

"subjective belief that the [employer's] action was retaliatory and that the claimed

reasons were pretext does not alone create a genuine issue of material fact"),

*abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004);

*Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (employee's "mere

assertions that [employer] had discriminatory motivation and intent . . . were

inadequate, without substantial factual evidence, to raise an issue precluding

summary judgment"). Indeed, a plaintiff's mere disagreement with an employer's

decision does not make the decision discriminatory. *See Hawkins v. Pepsico, Inc.*,

203 F.3d 274, 280 (4th Cir. 2000) ("[I]n a wrongful discharge action, it is the

perception of the decision maker which is relevant, not the self-assessment of the

plaintiff"). In the present case, Plaintiff has no evidence, other than bald assertions

on his part, that any of the defendants acted with discriminatory intent. Simply

put, this is insufficient to create a genuine issue of material fact.

Plaintiff has no credible evidence to refute Defendants' legitimate, nondiscriminatory reason for terminating Plaintiff. Accordingly, judgment should be granted against Plaintiff as to Counts I, II, IV and VI.

### D.   Plaintiff's Public Policy Claim (Count III) Is Barred Because It Is Already Embodied in Several Statutes

Plaintiff claims that he was discharged in violation of public policy. A public policy claim, however, is barred where the public policy upon which the claim is based is embodied in a statute that itself establishes a remedial scheme for enforcing the policy. *Ross v. Stouffer Hotel Co.*, 76 Hawai`i 454, 464, 879 P.2d 1046, 1047 (1994) (public policy claim fails if "the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge"); *Takaki v. Allied Machinery Corp.*, 87 Hawai`i 57, 951 P.2d 507 (Haw. App. 1998).

In the present case, Plaintiff states that "Defendants' conduct constitutes a tortious discharge in violation of a clear mandate of public policy for which Plaintiff has been damaged[.]" *See* Complaint ¶ 53. However, the policy against such retaliation is embodied in several statutes. *See, e.g.*, 42 U.S.C. §§2000e et seq.; HRS §378-2; HRS §378-62.[9] Plaintiff even concedes this point in his Complaint. *See* Complaint ¶ 52 ("Both federal and state law prohibit retaliation

---

[9] Plaintiff is familiar with these statutes because he brought claims under each of them.

against an employee."). Since the legislature has specifically addressed the public policy against retaliation in a comprehensive remedial scheme, "provision by the courts of a further remedy goes beyond what the legislature itself thought was necessary to effectuate that public policy," and such claims are barred as a matter of law. *See, e.g., Hew-Len v. F.W. Woolworth*, 737 F. Supp. 1104 (D. Haw. 1990) (public policy claim barred where policy against sexual harassment is embodied in HRS §378-2 and Title VII).

Accordingly, because the public policy asserted by Plaintiff is embodied in multiple comprehensive legislative schemes that specifically address wrongful termination resulting from retaliation, Plaintiff's public policy claim fails as a matter of law.

### E. Plaintiff's ERISA Withholding Claims (Count V) Is Barred Because Any Error Made Was Not in Defendants' Control and Has Already Been Rectified

Plaintiff brings a claim wrongful withholding of benefits under ERISA. Pursuant to 29 U.S.C.§1132(a)(1)(B), Plaintiff may bring an ERISA claim:

a)    to recover benefits due under the terms of the plan,

b)    to enforce rights under the terms of the plan, or

c)    to clarify rights to future benefits under the terms of the plan.

In the present case, Plaintiff alleges that the delay in depositing his contributions to his 401(k) plan resulted in lost interest amounting to $150.00. *See* Complaint ¶¶ 18, 59-60.

First, even assuming that there was a wrongful withholding of ERISA benefits, any wrongful withholding was not within Defendants' control. The deposition testimony of Ms. Caffrey indicates that such withholding or delay (to the extent that there was any) was within the control of CitiStreet, the fund administrator, and not within the control of Defendants. Ex.Q at 115-16. Ms. Caffrey's deposition testimony is corroborated by documentation of Defendants' diligent communications with CitiStreet to remedy errors that were made. Ex.G at 390; Ex.M. In contrast, Plaintiff has produced no documents that any wrongful withholding (to the extent that there was any) was within the control of Defendants. Therefore, Plaintiff cannot recover for wrongful withholding from Defendants.

Second, Plaintiff is unable to recover from Defendants based on payment and satisfaction. As indicated by the U.S. Department of Labor, PWBA, "[Plaintiff] was advised that [his] share of the lost interest was $150. This payment to participants' accounts was confirmed and verified by CitiStreet LLC on February 11, 2002." Ex.G at 388-89; Ex.L. Plaintiff has produced no evidence to indicate that his share of the lost interest exceeded $150 or that he had not received

the $150 payment. Therefore, even assuming that Plaintiff is entitled to recovery

for lost interest resulting from wrongful withholding of his ERISA benefits,

Plaintiff has already received payment for the error and his claim should be

deemed satisfied.

Accordingly, Plaintiff cannot prevail on his claim for wrongful

withholding of ERISA benefits and judgment should be granted against Plaintiff as

to Count V.

F.    **Plaintiff's IIED Claim (Count VII) Is Barred Because Plaintiff
      Cannot Establish His Prima Facie Case**

Under Hawai`i law, an actionable IIED claim requires proof that:

(1)    the act allegedly causing harm was intentional;
(2)    the act was unreasonable;
(3)    the actor should have recognized that the act was
       likely to result in emotional injury; and
(4)    that the emotional injury was severe.

*Roes v. FHP, Inc.*, 91 Hawai`i 470, 473, 985 P.2d 661, 664 (Haw. 1999). In this

case, Plaintiff cannot prove any of his *prima facie* elements.

First, the conduct alleged by Plaintiff is not sufficiently

"unreasonable" to give rise to an actionable IIED claim. According to the Hawai`i

Supreme Court, "unreasonable" conduct is conduct that is "outrageous." *Shoppe*,

94 Hawai`i at 387, 14 P.3d at 1068 (citation omitted). It is well established that an

IIED claim in the employment context cannot be sustained even for the "firing [of]

an employee for what are seen as unfair reasons." *See, e.g., Bragalone v. Kona*

*Coast Resort Joint Venture*, 866 F. Supp. 1285, 1294 (D. Haw. 1994). That is, even if Plaintiff had been terminated for discriminatory or retaliatory reasons, absent egregious circumstances, that would still not be sufficiently "outrageous" to support an IIED claim. *See, e.g., Ross*, 76 Hawai`i at 454, 879 P.2d at 1037 (rejecting IIED claim even though plaintiff had viable discrimination claim). Thus, the fact that Plaintiff was terminated for unprofessional behavior is insufficient to demonstrate "outrageousness."[10]

Even assuming Defendants' conduct towards Plaintiff was "outrageous," Plaintiff cannot demonstrate that he experienced *severe* emotional distress as a result of Defendants' conduct. As stated by the Restatement (Second) of Torts, §46 cmt. J, "The law intervenes only where the distress inflicted is so severe that *no reasonable man could be expected to endure it*." (Emphasis added.); *see also Shoppe*, 94 Hawai`i at 387, 14 P.3d at 1068 (same). In the present case, there is absolutely no evidence that Plaintiff's emotional distress (to the extent that there was any) was more severe than that suffered by a typical discharged employee.

Finally, Plaintiff cannot demonstrate that Defendants had any intent to cause Plaintiff severe emotional injury, or that Defendants should have recognized

---

[10] It appears that Plaintiff's sole evidence of "outrageousness" is that "[t]he only justification provided by Defendant Tom Caffrey for Plaintiff's termination was that he had been 'unprofessional' during his phone conversation with Defendant Ruby Caffrey in early March 2001." *See* Complaint ¶ 66.

that terminating Plaintiff for unprofessional conduct was likely to result in Plaintiff's alleged emotional injury.

Accordingly, Plaintiff cannot establish his *prima facie* case and judgment should be granted against Plaintiff as to Count VII.

### G.   Plaintiff's NIED Claim (Count VIII) Is Barred Because of the Exclusivity Provision of Hawaii's Workers' Compensation Statute

Workers' compensation is the *exclusive* remedy for negligence-based work injuries. *See* HRS §§386-3, 386-5; *Iddings v. Mee-Lee*, 82 Hawai`i 1, 5, 919 P.2d 263, 267 (Haw. 1995). Where, as here, a plaintiff's claim for negligent infliction of emotional distress (NIED) arises out of an employment relationship (and the termination thereof), the claim is precluded by Hawaii's Workers' Compensation Law, which provides the exclusive remedy for injuries sustained in the course of employment:

> The rights and remedies herein granted to an employee . .
> . on account of a work injury suffered by the employee
> *shall exclude all other liability of the employer to the*
> *employee . . . ,* at common law or otherwise, on account
> of the injury . . . .

HRS §386-5 (emphasis added).

Pursuant to the foregoing, the Hawai`i Supreme Court has held that NIED claims fall within the workers' compensation scheme. *Furukawa v. Honolulu Zoological Soc'y*, 85 Hawai`i 7, 18, 936 P.2d 643, 654 (Haw. 1997). This District has repeatedly applied *Furukawa* to bar NIED claims. *See, e.g.,*

*Kahale v. ADT Auto. Servs., Inc.*, 2 F. Supp. 2d 1295, 1301-02 (D. Haw. 1998) (holding that, under Hawai`i law, "claims for negligent infliction of emotional distress are barred by" the workers' compensation exclusivity provision) (emphasis added); *Ellison v. Northwest Airlines, Inc.*, 938 F. Supp. 1503 (D. Haw. 1996) (dismissing employee's claim for NIED).

Accordingly, Plaintiff claim for NIED is barred by HRS §386-5 and judgment should be granted against Plaintiff as to Count VIII.

## V.    CONCLUSION

For the foregoing reasons, summary judgment should be granted to Defendants as set forth herein.

DATED:    Honolulu, Hawaii, July 15, 2005.

LYNNE T. T. YOYOFUKU
NICHOLE K. SHIMAMOTO

Attorneys for Defendants
SMF SYSTEMS CORPORATION, TOM
CAFFREY AND RUBY CAFFREY